Our final case this morning is No. 23, 1951, Arnold v. United States. Okay, Mr. Daniels. May it please the court, may I note for the record that I probably will shortly be joined by my co-counsel and friend of 50 years, Mr. Royce D. Edwards, who's Well, he has been here and I'm sure he'll return. It's my third appearance before this court, absent a happy accident, which I am told I have no reason or basis to expect. It will be my last appearance, but it has been an honor to serve this court. Time's short, so I'll get right into it. I think a basic point is that both the government and plaintiff's appellant, Arnold, are in agreement. This case shocks the conscience, assuming, perhaps generously, that conscience plays much of a role any longer in that process that all of us have devoted our lives to, and that it's susceptible to being shocked. The government says it shocks the conscience that we would seek a million dollar fee in a case where the recovery was $5,000. A temporary taking of reversionary interest in property that lasted but one year's duration, and the damages are measured by the fair rental value of that property as determined by published market data in the state of Kansas, which describes a rental value to each and every arable acre in Kansas. We say it shocks the conscience that any defendant, and I don't care what seal it operates under, it might be a Pentastar, it might be IBM, it might be the federal legal of the United States, but every litigant has some obligation in a $5,000 case to settle the case for $5,000 rather than pursue eight years of hard-fought litigation defending against that ultimate prize. So I would propose to just raise four points here, and each will begin with a question, and I'll endeavor to answer it. Now, mindful of that, the briefing has been extensive, and my friend Mr. Bravender for the government has done an excellent job upholding his client's interests, and we've endeavored to do the best we could. But the first question is, and I've already alluded to it, why should it take eight years? Could I ask you a question that seems to be relevant to that? This material that allegedly comes within Rule 408, the settlement material, is that settlement communications about the underlying merits of the case or settlement material relating to the amount of the attorney's fee? It's relating to the fee, and may I say the reason that was offered in evidence, what it was, was some 90 pages of government commentary on our Lodestar, item by item, date by date, service by service. And in that commentary, the government said, without more, unnecessary or duplicative or excessive. It did not offer any facts to show where and how anything was unnecessary or duplicative or excessive. That is the only reason we offered it in evidence. It was not offered to show. And what do you get out of that? What do we get out of it? Yeah. We get out of it that the government, we say, did not satisfy its burden under Bywaters to show us wherein and how our entries were unnecessary or duplicative or excessive. And may I say, that's the substance of every other. Bywaters says that the URA is to read red in the same way as all other fees should stay. Bywaters is talking about the showing you have to make in court, not the showing you have to make in a settlement negotiation. Well, I understand that, Judge. But let me say this. Fee disputes are something no court ever wants to deal with. I have never had a fee shift dispute where the trial judge didn't say, what have you people done to settle this before dumping this burden in my lap? Never once. Whether it's under 42 U.S.C. 1988 or under Title 11. And the Court of Claims, therefore, has said that, particularly in URA fee matters, that evidence of what the parties talked about in settlement prior to the bringing of a contested application is relevant. And they've admitted it. So I understand that the trial court made an object of it. And let me say this. I've tried a lot of lawsuits all over the United States. Excuse me. I beg your pardon, Your Honor. I want to interrupt because time is short. So on the question of whether the work was excessive, whether you filed too much stuff, what is the specific reduction that the claims court invoked that idea for? It's essentially arithmetic. For one block of time expended over about a two-year period, it's a 30% reduction. For another year period, it's a 50% reduction. In other words, it is uniformly, not individual, time entries that are the object of an adverse decision in the fee order. It's all arithmetic. And does that include or is this separate from some question about whether during a several-year period when the government was still fighting what it lost in Kaplan that you filed too much? I'm not sure. Frankly, I'd have to see that in black and white in the fee opinion. The fact is that in the period post-Kaplan and post our successful summary judgment, Judge Horn, Marian Blank Horn, who was presiding in the case, keep in mind that the judge, and this isn't about judges. It's about pieces of paper, i.e. decisions. But the judge who ultimately entered the fee order did not preside over any substantive aspect of this case. Let me ask you another question. So one of the things that the claims court did, I think this was the first reduction, anyway, a very large reduction, was based on the idea that when the court looked at a bunch of the records concerning activities before the complaint, so pre-filing activities, the court said some of that seemed to involve people other than the plaintiff landowners. And maybe some of it involved trying to get clients. And I guess I'm not quite sure what to make of that. It seems relatively clear that pre-filing work in general is not excluded from compensation. Did you say not excluded, Your Honor? Not excluded from compensation in general. And that in a matter like this, where there may be common deeds in the line back to the original railroad acquisition, you're going to be looking at things that might apply to different current landowners. And on the other hand, I thought the claims court said, I can't separate this stuff out, sift, from your records. Where would I go and look at the relevant pre-filing records to understand whether there's a potential legal error that could have some effect on this? Well, unhappily, I see the massive appendix up there. The reason we've favored the court, as it were, with that appendix is because this court has an opportunity equal to that of the trial court to determine what was done and why. Because the trial court wasn't there either. Do you know which page numbers correspond to your pre-filing of the complaint attorney fee hour records? The trial court allowed some percentage of the pre-filing activity, right? It did. And I cannot recall precisely what. 15%, right? Yes, it was. Thank you, Your Honor. I do apologize. Well, we can't tell which items were allowed and which weren't because it wasn't done on that basis, right? No, it wasn't. It was all, it was, I hate to use the word arbitrary, it was by fiat. In other words, I don't like this time, which I mean in the best sense. It was an estimate. And therefore, I shall reduce it by X percent. I think, did the court look at, I noticed in some footnotes, the court made examples of some entries that were things like drive to Norton's from Joplin. Yes. Travel from Norton's to Joplin. I think there were some examples provided, right? I do not want to say that there were not specific references to specific time entries in the fee order. Your Honor is 100% correct. But do you think, and the court also pointed out that it was hard to look at those time entries, which you're trying to identify in the appendix. It's hard to look at those and tell which work was for, you know, your Rule 11 obligation to really do research, which we understand you have to do, and which work was for soliciting clients. That's why we want to look at those, if you can identify those. Pardon me, Your Honor. Your Honor. Well, let me just say this. The fee application itself has next to it the complete Lodestar time entries, which by date reference would show whether they were rendered prior to the filing of the petition or not. I do beg your pardon. The filing of the complaint or not. And I think the court has it exactly. Pre-filing work is not only compensable, it's absolutely necessary. It has to be done sometimes. You can either discover that your case is meritorious before you file it, or theoretically under Rule 11, you can hope to discover it after you have filed it. The trial court's right that some of that is client development, which isn't compensable, and some of it is working in the case, which is. And I guess what Judge Stoll is getting at is what did you do to show that 15% was the wrong number? Did you say we spent much more than 50% of the time on performing our Rule 11 obligations, let's put it that way? Did you give her specifics? I cannot say that we said it in those many words, Your Honor. I can say that we argue we had a Rule 11 duty to investigate the claim. I can also say that with regard to those plaintiffs, among those who engaged us originally, whose claims did not succeed, we listed time entries respecting those people at no charge. Something the government ignored during negotiations, something the government ignored during a briefing on the application, and something which I believe is ignored in the field. So the way our law firm works is that you've got to record all your time, whether you're going to get any money for it or not. And that's what was done here. And it was listed as no charge. I guess I'm seeing that the trial court doesn't have the obligation on its own to sift through these entries. It has to rely on counsel to list the entries that should have been reflecting recoverable time. And I guess you didn't do that, right? Well, I say that neither did the government. The government was not burdenless here. It did not advert to any facts showing wherein and how any of these charges were assailable. The court apparently determined to do it ex gratia, and perhaps that is his or her or its right. But the fact is the government did not identify any of this. So if I am to be tarred with a brush, I might say the government should bear the same mark. Nobody, it would appear, did anything to assist this court in showing wherein and how these entries were compensable. We thought we carried that burden by identifying the lodestar and identifying temporarily when those entries were made so the court could determine based upon the detailed description and when the services were rendered whether they were compensable or business developed. I see my time has expired. Okay, we'll give you two minutes for rebuttal. Mr. Brabender? Thank you. May it please the court, my name is Alan Brabender with the United States. This appeal of an award of attorney's fees can be resolved on the abuse of discretion standard of review or the doctrine that arguments not made or developed in the opening brief are forfeited. Starting with the standard of review, while neither party agreed with the CFC's ultimate decision, the determination of a reasonable fee award is one within the trial court's considerable discretion and therefore is reviewed only for an abuse of discretion. But plaintiffs fail to acknowledge the standard of review here, seeking instead for this court's de novo review. And as such, plaintiffs utterly fail to show that the CFC committed an abuse of discretion. There is no issue in this appeal warranting de novo review. The issues are evidentiary rulings, fact findings, or determinations of reasonable hours or hourly rates. To the extent that the court didn't apply the correct law, and I'm not saying that the court didn't, but to the extent the court didn't, which is an allegation of being made, that could be an abuse of discretion, right? Certainly, that could be an abuse of discretion. And to the extent there's a clearly erroneous fact finding, that also could be an abuse of discretion. That is also true. But there is no issue of law put before this court, and there is no demonstration of a clearly erroneous fact finding. In fact, most of the stated reasons for the CFC's fee determinations are unchallenged in the opening brief. Again, that's because the plaintiffs are seeking a de novo review and didn't feel the need to challenge the CFC's stated rationale. So the point that I guess jumped out to me is, what is it, page 21? And Mr. Daniels adverted to this. The idea that the amount of the fee is a very large multiple of the recovery. And I'm not sure that there isn't a legal error there. Assuming, right, on the claims for which there was a recovery, every one of them was small, and assuming, whether it's this case or a hypothetical, that the plaintiff gets everything asked for, the fact that it takes a tremendous amount of legal work to arrive at that is not a ground to reduce the fee if all of it was justified to win that small amount. Right? That's correct, Your Honor. I think we said that in Bywater. But that's not the reason for— A number of courts of appeals have said that, and it's almost inherent in a fee provision about small takings. The government shouldn't be able to make small takings and not have to pay the fees for the plaintiffs to recover just because there's a lot of work involved in winning the $1,200. And the plaintiffs were well compensated for that work. They were given over $110,000. So what is going on here in the reference about minimal success and other considerations? The URA application seeks nearly 200 times plaintiff's aggregate recovery. So what the CFC is referring to there is the final of its six reductions. And because it was the final of a series of cumulative reductions, it's a fairly small reduction in the end, a 35% reduction. And that was imposed because of the disparity between the results in the fee request, but also due to the plaintiff's litigation conduct. I want to put everything else aside, and I guess I'm worried about a general idea that a small recovery, even if it's a complete success, can't support a very large fee, even if that very large fee represents in its entirety work necessary for the small recovery. And that seems, I think, wrong as a matter of law, and it shouldn't infect a fee assessment. I don't know if it's wrong as a matter of law, but it's not the situation before this court. Well, I guess I'm interested in the question whether it's wrong as a matter of law, because if you all and the trial court think it is right as a matter of law, then I fear I'm going to keep seeing that. So I'm interested in whether that's incorrect. I think there's a sentence, at least in Byeswater, that says that's wrong. I've got a variety of other courts of appeals decisions that say that by itself cannot be a reason to reduce the load star. Well, I think what Bywater says is that a fee must be high enough to allow someone with a small takings claim to vindicate their rights. And in this situation, the plaintiffs haven't shown that $110,000 isn't sufficient to allow plaintiffs with small claims to vindicate their rights. And in fact, in these sort of rails-to-trails takings litigation, the plaintiffs are not having a difficult time finding attorneys. Attorneys are lining up to represent them. But what Bywater also says is that trial court does have the discretion to reduce hours due to the disparity between the results obtained and the hours expended, as long as it's done on an hours basis when calculating the load star. That is exactly what the CFC did here. It followed Bywater's instructions to a T. Where is this reference to reducing the hours with the results? Is it on A25? Is that right? I was looking at the bottom of A21. A21. The very last sentence of the page. I mean, I understand, obviously, if there's a lot of work that's done and a bunch of it is done for claims on which the plaintiff did not succeed, you don't get paid for that. But this seems to be simply focusing on the disparity between the amount recovered and the fee. And so I am focusing on the possibility that the idea is floating around here that even if a plaintiff wins on every single claim and gets every single dollar requested, if that sum total is small, you cannot have a fee that's very much larger than that, even if all those hours were actually necessary. And I don't think that's what we're arguing, Your Honor. And I don't think that's what the CFC found. Again, it took into account many different factors in making its final small reduction. And it was more than just the disparity. What else was it based on? The plaintiff's thing said in pages A21 to 25. Sure. It was also based on plaintiff's litigation conduct, its inconsistent positions that it took throughout the litigation. Incurring unnecessary hours. What's that? I'm sorry? Incurring unnecessary hours. Incurring unnecessary hours, insistence on briefing irrelevant issues and falsely representing that they did not seek any hours for the STP proceedings. So it was the litigation conduct in addition to the disparity, which is why the court entered its final cumulative reduction, which is fairly small compared to the other reductions. And unless this court has questions about the other reductions. Can I just ask how to think about the question of pre-filing work? Can you describe what you think the law says is recoverable and what isn't? Well, what the CSC said is it was going to compensate for the benefits, for the work that was done for the benefit of a client, a client that prevailed in the litigation. Would that mean that you have to incur the work after the retention took place? You couldn't be compensated for any work before the retention? I think that would depend on whether or not the work ultimately benefited the client. But much of the work here was done, was basically business solicitation, at least a good portion of it. Convening public hearings, sending out letters, things like that. Do you know the appendix site for where those? Sure. I looked that up while I was sitting there. It starts at page 3529, and you will see based on the dates, which was before the complaint was filed. So suppose there's a situation, right? This may have some correspondence to this case or not. Railroad files an application to abandon in front of STB, there's a NITU issued. It comes to the point at which there might well be a taking, which might be right at the time of the NITU or at the time of an actual conversion or at the expiration of the NITU. But a lawyer says, I'm going to investigate. There may well have been a significant number of takings of the abutting landowners' interests. And I'm going to go do the research to look at where the railroad got all of the rights that it got. Try to figure out which ones were mere easements and which ones were fee simple. And look at the property records and see who now owns it. And at that point, I will have identified who actually has a claim. Is it your view that none of that work is compensable? As long as that work ultimately benefited a client, I think it is compensable. But the problem that the CFC faced was that it couldn't tell, based on the state of the billing records, which work ultimately benefited a client who prevailed in the litigation. And it was not just the fact that there was some business development and indecipherable billing records. The court also found that the pre-filing hours were excessive. Something like, I believe it was 700 hours before the filing of the complaint. In a situation where drafting a complaint can be done by a paralegal in seven hours. Well, it depends whether you want it to be a, I forget what the lingo is, a storytelling complaint or a bare bones complaint. And there are often reasons to do one or the other, including when the defendant sees an elaborate factual complaint. Maybe the defendant says, now I actually understand the case. I'm going to make an offer. Sure, certainly. But that doesn't change the fact that CFC found that the hours were excessive. And that was another reason for the reduction in the pre-filing hours. So, looking at page 25 here, there's this ultimate 35% figure. It's a 35% reduction to the hours. It's not an arbitrary on, just this is too much money. I'm reducing it by 35%. That's correct. That's based on an analysis of what the hours were. That's correct. Based on this court's decision in Bywaters, that's the sort of analysis that the court strove to undertake, yes. Okay. All right. All right. Thank you. Thank you. Mr. Daniels, you've got two minutes here. May it please the court, I do beg your pardon. A couple things. First of all, with regard to standard of review, and I think, frankly, the court is, if not the government, is already seized with the concepts involved. But we cover standard of review in our reply brief on pages 7 and 8 thereof, or as repaginated by the ECF pages 17 and 18. So I would commend that, again, to the court's review. I don't think, and it doesn't appear that there's any dispute, that if an error of law was made, that this court is somehow powerless to correct it based upon some blanket of impenetrable discretion. So what did you do on this issue of whether $111,000 in attorney's fees was sufficient to litigate this case? Did you make a showing that that amount of the fee award was too little to adequately litigate this case? Well, we would have to make that showing in this court. I beg your pardon? I would think you'd have to make that showing in the trial court. Well, the trial court hadn't yet decided that it would be $100,000. No, but the government was saying that they were arguing that you had spent too much money litigating this case. They already were. They hadn't liquidated it by dollar amount. What did you say justified the necessity for a million dollar fee? For good or ill, Your Honor, pardon me for interrupting. For good or ill, we stood on the gospel of bywaters, that we also emphasize that these cases are complex. And I might say, insofar as the court would now look at the billing records to try to determine who was served by pre-filing work, their names are in the time entries, indicating that it's easy to identify, by name, a prevailing plaintiff from a plaintiff who did not succeed. Beyond that, Your Honor, one fact needs to be emphasized, and that is that all of the post-summary judgment briefing that was done that was allegedly excessive on our part was ordered by Judge Horne. We're lawyers. We only have three options when a court orders us to do something. Do I remember correctly that it was requested and then ordered? You requested it. You requested and then ordered it? There was a request to summary judgment brief. We did not make any post-summary judgment ruling requests for additional things. In other words, she would order, and I mean that in the best sense, she would order us to brief abandonment under Kansas law, which doesn't have a lot to do with these things. It's abandonment under federal law that's the ratio of decent and decent. Then she would ask us to brief whether the fact that the STB continued to have the discretion to entertain in the abandonment position before consummation of abandonment represented a continued taking, even though the NITU itself had expired. That was her idea, not ours. We were told to brief that. There were other things that we were told to brief. We were told to brief how much Kaplan discovery the government should have when it had not yet won, or as it happened, lost the Kaplan case. So all of that, I suppose we could have hastened to this court for preemptory writ. I think we all know where we have gone with that. The fact is we determined to comply, and in order to do something, we did it. Did we do it excessively? I would say not. But I apologize for the force of that argument. I mean no disrespect to any judicial officers here. Second of all, with that forceful argument, I think we're out of time. I think I'm done here. Thank you, Mr. Daniels. Thank you, sir. Thank you, Mr. Bromley. Thank you. The case is submitted. That concludes our session for this morning.